UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER T. COCKCROFT,<br><br>    Plaintiff,<br><br>  v.<br><br>RICHARD KIRKLAND; et al.,<br><br>    Defendants.<br>_____ / | No. C 05-1080 MHP (pr)<br><br>**ORDER GRANTING IN LIMITED PART DEFENDANTS' MOTION TO DISMISS** |

## INTRODUCTION

Peter T. Cockcroft, formerly an inmate at Pelican Bay State Prison, filed this pro se civil rights action under 42 U.S.C. § 1983. Defendants have moved to dismiss the action under Federal Rule of Civil Procedure 12(b) and 12(b)(6). Cockcroft has opposed the motion. The motion will be granted in part and denied in part. The case also will be referred for appointment of counsel.

## BACKGROUND

Plaintiff's amended complaint is the operative pleading and alleged the following: Cockcroft was housed in the psychiatric services unit ("PSU") at Pelican Bay on and after March 4, 2004. After he arrived in the PSU, Cockcroft learned that the toilets in the facility "backflushed." When Cockcroft flushed his toilet, sewage would rise up in the bowl of the toilet in the adjoining cell and, when the toilet in the adjoining cell was flushed, sewage would rise up in the bowl of Cockcroft's toilet. The amended complaint did not state that the sewage overflowed out of the toilet bowl. The backflushing was due to a plumbing design

problem known to defendants, who failed to correct it. Prison officials also refused to give Cockcroft adequate supplies and tools to sanitize his toilet in response to this problem. Cockcroft sometimes had to use shower towels and bar soap to clean his cell, which was a problem because sometimes he only received a linen exchange once every 2-3 weeks. Due to the backflushing, Cockcroft contracted an infection that was accompanied by sores on his buttocks. Cockcroft reported the backflushing problem to various defendants but they failed and refused to have the problem fixed. He also reported his need for cleaning supplies to sanitize his toilet to various defendants who failed and refused to provide the requested supplies. He filed unsuccessful inmate appeals about the problems. The court found that, liberally construed, the allegations stated a cognizable § 1983 claim under the Eighth Amendment against the following defendants for their failure to remedy the known problem of a backflushing toilet in Cockcroft's cell and failure to provide cleaning supplies: Wiltse, Cardinas, Ramos, Rangel, Hyde, Wolf, O'Neill and Kirkland. See Order of Service, pp. 1-3, 5, 10. The court also explained that the deliberate indifference claim could rest on defendants' activities with regard to Cockcroft's inmate appeals, even though no due process claim was stated for the inmate appeal activity. Id. at 7.

Cockcroft also alleged that, one day, he asked defendants Hyde and Wiltse for clean sheets because his sheets were soiled with blood from the sores on his buttocks. They refused to help. The court found that, liberally construed, these allegations stated a cognizable § 1983 claim under the Eighth Amendment against defendants Hyde and Wiltse for their refusal to provide clean sheets on this occasion. Id. at 5, 10.

Cockcroft also alleged a separate claim about deliberate indifference to his safety. On July 22, 2004, Cockcroft filed an inmate appeal asking for two inmates to be put on his enemy list and another inmate who had been removed to be put back on his enemy list. Defendant Linfor disclosed the enemy memo to the three requested enemies, knowing that it would endanger Cockcroft's safety. The court found that, liberally construed, the allegations stated a cognizable § 1983 claim under the Eighth Amendment against defendant Linfor for disclosing to Cockcroft's enemies that Cockcroft had identified them as enemies and that

2

1 allegedly identified Cockcroft as a snitch. Id. at 8.

2 Cockcroft moved into the Pelican Bay PSU on March 4, 2004, Amended Complaint, ¶ 25, started complaining about the toilet and cleaning supply problems about two months later, id. at ¶ 27, and apparently endured those conditions for almost two years before his transfer to California State Prison - Sacramento (a/k/a "New Folsom") in or about January 2006. See Notice of Change of Address, filed Jan. 26, 2006. (Docket # 20.)

**DISCUSSION**

A. <u>Exhaustion As To Claim Against Hyde and Wiltse</u>

Cockcroft alleged in his amended complaint that defendants Hyde and Wiltse failed to provide clean sheets that he requested on July 7, 2004, because his sheets were soiled with blood from the sores on his buttocks. Defendants move to dismiss this claim on the ground that Cockcroft failed to exhaust administrative remedies before he filed this action.

"No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The State of California provides its inmates and parolees the right to appeal administratively "any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare." See Cal. Code Regs. tit. 15, § 3084.1(a). In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels of appeal: (1) informal resolution, (2) formal written appeal on a CDC 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4) third level appeal to the Director of the California Department of Corrections. See id. § 3084.5; Ngo v. Woodford, 548 U.S. 81, 126 S. Ct. 2378, 2383 (2006); Barry v. Ratelle, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997). The statute requires "proper exhaustion" of available administrative remedies. See Ngo, 126 S. Ct. at 2387.

A prisoner's failure to exhaust administrative remedies is a matter in abatement. Defendants have the burden of raising and proving the absence of exhaustion, and may do so by way of an unenumerated Rule12(b) motion. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th

3

**United States District Court**
For the Northern District of California

1  Cir.), cert. denied, 540 U.S. 810 (2003).  "In deciding a motion to dismiss for a failure to
2  exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed
3  issues of fact."  Id. at 1119-20, citing Ritza v. Int'l Longshoremen's & Warehousemen's
4  Union, 837 F.2d 365, 368 (9th Cir. 1988).  The court can decide factual issues in a
5  jurisdictional or related type of motion because there is no right to a jury trial as to that
6  portion of the case, unlike the merits of the case (where there is a right to a jury trial).  See id.
7  Wyatt and Ritza allow this court to resolve factual disputes, but only with regard to the
8  exhaustion issue.

9  Cockcroft filed an inmate appeal in which he mentioned the refusal to provide the
10 clean sheets on July 9, 2004, but did so in a context that did not exhaust the claim he now
11 presents.  Cockcroft's inmate appeal dated July 25, 2004, complained about multiple
12 problems.  See Opposition, Exh. 1.  He wrote that his inmate appeals regarding unsanitary
13 living conditions submitted to various officers were not receiving adequate responses and
14 requested that his appeal "be processed as a staff complaint against the herein peace officers
15 mentioned for arbitrary obstruction of my First Amendment right to petition the government
16 for redress of grievances & access to the courts."  Id. at 1.  The inmate appeal described all
17 the allegedly inadequate responses to his complaint about the toilets and lack of cleaning
18 supplies.  It also explained why the toilet and cleaning supply problems concerned him: he
19 had sores on his buttocks and was concerned about contracting a disease.  In the seventh of
20 eleven paragraphs describing his problem, he wrote: "The back-flushing of the toilets is
21 compounded by denial of necessary or adequate cleaning supplies . . . & is further
22 compounded by denial of clean sheets & towels which isn't being provided weekly, like on 7-
23 9-04 when my sheets were bloody."  Id. at 3-4.  The action requested portion of the inmate
24 appeal requested: that inmates be provided cleaning supplies; that the toilet backflushing be
25 fixed; that a schedule be implemented to clean the dayrooms, cells and toilets; and that
26 damages be awarded for unsanitary living conditions, as well as for obstruction of his First
27 Amendment rights to petition the government and access the courts.  Id. at 1, 5.
28 The July 25, 2004 inmate appeal was screened out as duplicative of an earlier inmate

4

1 appeal, i.e., 04-1917. Id. at 6. Inmate appeal 04-1917, initiated on June 20, 2004, had
2 complained about the toilet system and the lack of cleaning supplies, and had requested that
3 the toilets be fixed, cleaning supplies be provided, and monetary relief be awarded.
4 Amended Complaint, Exh. A.

5       The July 25, 2004 inmate appeal did not exhaust the claim against defendants Wiltse
6 and Hyde. The claim asserted in the amended complaint was that Cockcroft told Wiltse and
7 Hyde on July 9 that his sheets were soiled with blood and he needed clean ones. That is not
8 the same as the more generalized assertion in his inmate appeal that the problems with the
9 toilets and lack of cleaning supplies were compounded by the denial of weekly sheet
10 exchanges. It takes liberal construction of the July 25 appeal to find that it included a claim
11 for denial of weekly sheet exchange. Even if the inmate appeal was construed liberally to
12 have such a claim about the denial of weekly sheet exchange, Cockcroft's mention of bloody
13 sheets on July 9 was only an illustration of the failure to provide weekly sheet exchange, not
14 a separate claim. What's the difference? The alleged failure to frequently exchange linens
15 did not rise to the level of an Eighth Amendment violation, see Order Of Service, p. 5, and it
16 was the additional facts pled for the July 9 incident that made that particular one different: on
17 that day, Cockcroft allegedly alerted the two correctional officers that his sheets had become
18 soiled by blood from his sores and he needed clean ones, id. at 2, 5. The July 25 appeal did
19 not state that Cockcroft told anyone of a specific and unique need for clean sheets on July 9.

20       Cockcroft urges that prison officials should not be able to obstruct his access to the
21 courts by manipulating the inmate appeal screening process to reject a claim as duplicative
22 but not letting the earlier appeal count for exhaustion purposes. At first blush, there does
23 seem to be an inconsistency in the analysis, as one might think that the director's level
24 decision on the June 20 appeal should suffice to exhaust the July 25 appeal if the latter was
25 duplicative of the former. However, under the particular facts here, it was possible for the
26 July 25 appeal to mention the July 9 bloody sheets and to be duplicative of the June 20
27 appeal, yet not exhaust the claim for the July 9 bloody sheets. Even though there was a new
28 fact mentioned in it, the July 25 appeal addressed the same plumbing problem and lack of

5

cleaning supplies mentioned in the earlier appeal and requested the same relief. It was properly rejected as duplicative. Prison officials did not block Cockcroft from presenting an appeal that Hyde and Wiltse refused to provide clean sheets after Cockcroft informed them on July 9 that he needed clean sheets because his were soiled with blood.

Cockcroft never received a director's level decision on an inmate appeal that Hyde and Wiltse refused to provide clean sheets after Cockcroft informed them on July 9 that he needed clean sheets because his were soiled with blood. The claim is not exhausted. Defendants' motion to dismiss this claim for failure to exhaust is GRANTED.

B.  Rule 12(b)(6) Motion

1.  Legal Standards

A complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (quotation marks and citations omitted). In examining the sufficiency of the pleading, the court must liberally construe a pro se complaint. See id.

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss on the ground that there is a "failure to state a claim upon which relief may be granted." A motion to dismiss should be granted if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007) (abrogating Conley v. Gibson, 355 U.S. 41 (1957)). The court "must accept as true all of the factual allegations contained in the complaint," Erickson, 127 S. Ct. at 2200, but need not accept as true allegations that are legal conclusions, unwarranted deductions of fact or unreasonable inferences. See Sprewell v. Golden State Warriors, 266 F.3d 979, 988, amended, 275 F.3d 1187 (9th Cir. 2001). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

6

2. Qualified Immunity.

Defendants contend that they are entitled to qualified immunity on the claims concerning the backflushing toilets and cleaning supplies because they were not plumbers and because they provided the limited cleaning supplies authorized by a prison policy.

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Determining whether qualified immunity exists is a two-step inquiry: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2001). If the answer to that first question is affirmative, "the next, sequential step is to ask whether the right was clearly established. . . . 'The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' . . . The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 201-02 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

Taken in the light most favorable to plaintiff, the facts alleged show the defendants' conduct vis-a-vis the backflushing toilets and lack of cleaning supplies violated plaintiff's rights under the Eighth Amendment. The court already determined that. See Order of Service, pp. 4-5. The first step of the Saucier analysis is satisfied, so the next step is to determine whether the right was clearly established, such that it would be clear to a reasonable official that what he was doing violated that right.

The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life such as food, clothing, shelter, sanitation, medical care and personal safety. See Farmer v. Brennan, 511 U.S. 825, 832 (1994); Helling v. McKinney, 509 U.S. 25, 31 (1993). A prison official violates the Eighth Amendment when he acts with deliberate indifference to a known

7

objectively serious risk to a prisoner's health or safety. See Farmer, 511 U.S. at 834. "The circumstances, nature, and duration of a deprivation of [] necessities must be considered in determining whether a constitutional violation has occurred. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000), cert. denied, 532 U.S. 1065 (2001). Usually, a more offensive condition will be of constitutional significance when it exists for even a short time, while a less offensive condition will be of constitutional significance only when it has existed for a much longer time. Long-term unsanitary conditions violate the Eighth Amendment, as do non-working toilets. See, e.g., Hearns v. Terhune, 413 F.3d 1036, 1041-42 (9th Cir. 2005) (allegations of serious health hazards in disciplinary segregation yard for a period of nine months, including toilets that did not work, sinks that were rusted and stagnant pools of water infested with insects, and a lack of cold water even though the temperature in the prison yard exceeded 100 degrees, enough to state a claim of unconstitutional prison conditions); Anderson v. County of Kern, 45 F.3d 1310, 1314 (9th Cir.) ("Unquestionably, subjection of a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment."), amended, 75 F.3d 448 (9th Cir.), cert. denied, 516 U.S. 916 (1995); id. at 1314-15 (placement of violent and mentally disturbed inmates in safety cell that was dirty and smelly with a pit toilet for short duration (up to one day) did not violate 8th Amendment). Defendants agree that the law is clearly established "that prisons must provide 'a minimum level of cleanliness and sanitation for the health and safety of the prisoners.' Lunsford v. Bennett, 17 F.3d 1574, 1580 (7th Cir. 1994).

Defendants assert they are entitled to qualified immunity on the unsanitary backflushing-toilet problem because they followed a longstanding policy at the prison to only allow PSU inmates a spoonful of powdered soap, issued once a week on a wet wash cloth, with which to clean their cell toilets. This policy existed in the PSU apparently because it was considered too dangerous to give PSU inmates cleaning utensils because the utensils could be used as weapons. Even assuming that compliance with a prison policy would entitle one to qualified immunity – an issue the court does not decide today – defendants' argument is based on a factual scenario inconsistent with the allegations in the amended

8

1 complaint. Plaintiff alleged not that the weekly spoonful of powdered soap on a wash cloth
2 was inadequate, but that prison staff was not providing even that much. The amended
3 complaint, liberally construed, alleged that plaintiff was not even being given the weekly
4 spoonful of cleaner on wet cloth and that his requests for cleaning supplies were refused or
5 ignored. See, e.g., Amended Complaint, ¶¶ 26-31, 41, 44, 46, 56, 60. In a Rule 12(b)(6)
6 motion, the defendants cannot obtain qualified immunity in reliance on facts contradicted by
7 the allegations of the amended complaint. Defendants may be able to show at trial that they
8 did provide the supplies called for by the prison policy, but in ruling on a motion to dismiss,
9 the court must accept as true plaintiff's allegations that they did not provide the supplies.
10 Doing so leads to the conclusion that defendants did not comply with prison policy and
11 cannot obtain qualified immunity based on reliance on that policy.

As to the plumbing part of the problem, defendants assert that they are entitled to qualified immunity because they weren't plumbers who could fix a plumbing problem. The blame-it-on-the-plumber argument fails. The amended complaint alleged that the back-flushing problem was widespread at the facility and was caused by a design defect that was not something the plumber could fix without funding being approved by prison officials. See, e.g., Amended Complaint, ¶¶ 25, 32, 40, 44, 54. "[The plumber] adjusted the water pressure however the back-flushing continued and he said I can't lower the pressure any more or it won't flush. That prison administrators are aware of the problem but [until] they approve the funding for the project there was nothing he could do to fix the back-flushing problem." Id. at ¶ 47. That quoted allegation is critical because it shows this was not the sort of problem that required only a call to a plumber, but instead was a systemic problem for which a retrofit project had to be undertaken and that would not happen until funding was approved by prison officials.

More importantly, defendants' argument that this was a plumber's problem misses the point in that a prisoner-plaintiff's pleading obligation is only to identify an objectively serious condition, and not to provide a solution for it. There apparently is more than one way to deal with a backflushing toilet – e.g., the toilet could be fixed, the prisoner could be moved

to a cell without a backflushing toilet, or maybe the toilet could be cleaned daily – and defendants cannot claim qualified immunity by simply asserting that one of these solutions was beyond their skill set. Defendants are not entitled to qualified immunity on the claim.

3. Claim Against Linfor

Cockcroft alleged in his amended complaint that defendant Linfor was deliberately indifferent to his safety by disclosing to three other inmates that they had been placed on Cockcroft's enemy list at his request, and this caused him to be considered an informant, which in turn caused him to place nine more inmates on his enemy list.

Defendants move to dismiss the claim on the ground that there are no allegations that Cockcroft was ever actually physically harmed or suffered any physical injury as a result of Linfor's actions and he is no longer housed at Pelican Bay. Defendants assert, therefore, that 42 U.S.C. § 1997e(e) bars the claim.

Defendants' argument fails because the statute they cite has been construed by the Ninth Circuit to have a rather limited application. 42 U.S.C. § 1997e(e) provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury." The physical injury requirement only applies to claims for mental and emotional injuries and does not bar an action for a violation of a constitutional right. See Oliver v. Keller, 289 F.3d 623, 630 (9th Cir. 2002).

Although hardly a model of clarity, Oliver determined that § 1997e(e) does not apply to claims for compensatory damages not premised on emotional injury, suggesting that the violation of a constitutional right has a compensatory value regardless of what the physical/emotional injuries are. Oliver, 289 F.3d at 630. In other words, damages would be available for a violation of Cockcroft's Eighth Amendment rights without regard to his ability to show a physical injury. Oliver made this point in holding that "§ 1997e(e) applies only to claims for mental and emotional injury. To the extent that appellant's claims for compensatory, nominal or punitive damages are premised on alleged Fourteenth Amendment violations, and not on emotional or mental distress suffered as a result of those violations, §

10

1997e(e) is inapplicable and those claims are not barred." Oliver, 289 F.3d at 630. The fact that Cockcroft never suffered any physical injury as a result of Linfor's alleged acts may make his Eighth Amendment claim of very little financial value but does not make the claim non-existent.

Defendant Linfor also contends he is entitled to qualified immunity on the claim against him. However, his argument is based on facts that are different from the facts alleged in the amended complaint because he omits from his qualified immunity discussion the allegations that Linfor disclosed to Cockcroft's enemies a document that showed he had reported they threatened him knowing that it would threaten his safety, and that in turn led to threats to Cockcroft and required that he add even more names to his enemy list. See Amended Complaint, ¶¶ 63-65. It may be that the concern with being labeled a "snitch" is overstated but that is not something that can be resolved at the pleading stage. Accepting the facts alleged as true for purpose of this motion leads to the conclusion that qualified immunity is not appropriate. See Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989) (deliberately spreading rumor that prisoner is snitch may state claim for violation of right to be protected from violence while in state custody). Defendant Linfor has not argued that he would be qualifiedly immune for showing to Cockcroft's enemies a memo that stated that Cockcroft told prison officials that they had threatened his safety.

        4.        Claims Against Kirkland and O'Neill.

Defendants next allege that the allegations against defendants Kirkland and O'Neill are solely based on supervisory liability, and therefore should be dismissed because there is no respondeat superior liability under § 1983.

As to defendant Kirkland, the amended complaint alleged that he was the warden at Pelican Bay, and generally in charge of the prison. But the amended complaint went further than those respondeat superior type allegations, and alleged that Kirkland denied his appeal in which he requested that the toilets be fixed and that he receive cleaning supplies, including disinfectant, id. at ¶ 51; that Kirkland and other defendants failed to provide him with the means to keep his living quarters clean and sanitary, failed to maintain a sanitary and clean

facility, "and failed in their duty to properly supervise the PSU officers and to regularly inspect the PSU to ensure that human decency and sanitation was being maintained," id. at ¶ 72; and that defendants, including Kirkland, knew of the unsanitary living environment and continued to subject him to it. See id. at ¶¶ 75-77. These allegations, liberally construed, go beyond respondeat superior liability and are sufficient to state a claim against defendant Kirkland for the Eighth Amendment violation. It may turn out that Cockcroft cannot develop proof to support his allegations against Kirkland, but the matter of proof is irrelevant to determining the adequacy of the pleading at the Rule 12(b)(6) stage.

As to defendant O'Neill, the amended complaint alleged that he was an associate warden at Pelican Bay, and that he denied Cockcroft's inmate appeal regarding his request for cleaning supplies and to have his toilet fixed. Amended Complaint, ¶¶ 22, 51. Defendants argue that "the actual investigation of the inmate appeal was done by other Pelican Bay staff." Motion, p. 11. Regardless of who helped him investigate and respond to the appeal, defendant O'Neill signed the first level appeal response, approving the denial of the appeal. See Amended Complaint, Exh. A, p. 7. That is enough activity for him to be potentially liable for the constitutional violation. See Jett v. Penner, 439 F.3d 1091, 1098 (9th Cir. 2006). As this court has explained, Eighth Amendment liability may exist for actions taken with regard to an inmate appeal. "Where, as here, an inmate has an ongoing safety/health problem and staff members are alerted to the ongoing problem by the inmate appeals, those staff members may be liable for failing to take action to remedy the ongoing problem." Order of Service, p. 7.

5.   Injunctive Relief Requests

Defendants request that the injunctive relief requests should be dismissed as moot because Cockcroft has been transferred to another prison. Cockcroft objects and argues, among other things, that he may be transferred back to Pelican Bay because there are only two prisons in the CDCR system that have PSUs, and he has already been sent there twice.

The jurisdiction of federal courts depends on the existence of a "case or controversy" under Article III of the Constitution. A claim is considered moot if it has lost its character as

12

a present, live controversy, and if no effective relief can be granted due to subsequent developments. See Flast v. Cohen, 392 U.S. 83, 95 (1968). When an inmate is released from prison or transferred to another prison and there is no reasonable expectation nor demonstrated probability that he will again be subjected to the prison conditions from which he seeks injunctive relief, the claim for injunctive relief should be dismissed as moot. See Dilley v. Gunn, 64 F.3d 1365, 1368-69 (9th Cir. 1995); Darring v. Kincheloe, 783 F.2d 874, 876-77 (9th Cir. 1986).

Cockcroft's transfer to another prison make his injunctive relief requests moot. The injunctive relief requests therefore are dismissed. Additionally, with regard to the requests that certain inmates be moved from non-confidential to confidential enemy lists and certain chronos given to other inmates be rescinded, the relief requested would be of no help to Cockcroft if the allegations of the amended complaint are true. That is, if Linfor has already disclosed the information, the damage has already been done and an injunction will be of no aid to Cockcroft.

## CONCLUSION

Defendants' motion to dismiss is GRANTED in part. (Docket # 55.) The claim against defendants Hyde and Wiltse for the sheet exchange on July 7, 2004 is dismissed without prejudice to plaintiff filing a new action on that claim if he ever exhausts administrative remedies as to that claim. The injunctive relief requests are dismissed as moot. All the other arguments in the motion to dismiss are rejected.

Plaintiff's motion for assignment of the case to a magistrate judge for non-dispositive pretrial matters only is DENIED. (Docket # 54.)

By separate order, the court will refer this action for the appointment of counsel to represent plaintiff to move this action toward resolution.

IT IS SO ORDERED.

Dated: March 7, 2008

Marilyn Hall Patel
United States District Judge